# Exhibit A

EXECUTION VERSION

# SHARE PURCHASE, SETTLEMENT, PLEDGE, AND TOLLING AGREEMENT

This Share Purchase, Settlement, Pledge and Tolling Agreement ("Agreement") is made this 13th day of September 2016 ("Effective Date"), among Michel Al-Absi, Jessica Al-Absi, and Bachir Al-Absi (collectively, the "Sellers") and Black Diamond Financial Group LLC ("BDFG") and Patrick W. M. Imeson ("Imeson") (together with BDFG, the "Purchasers"). The Sellers and the Purchasers are individually referred to herein as the "Party" and collectively as the "Parties."

## RECITALS

WHEREAS, each of Seller had previously purchased ten (10) membership units (each a "Unit" and collectively, the "Units") of Calim Bridge Partners II LLC ("CBP II"), a Delaware limited liability company;

WHEREAS, CBP II transferred its assets to Black Diamond Holdings LLC ("BDH"), a Colorado limited liability company, in return for membership units of BDH;

WHEREAS, BDFG, a Delaware limited liability company is owned and controlled by Imeson, and has served and is currently serving as the manager of Calim/Black Diamond Funds (as defined below);

WHEREAS, Sellers have asserted claims against Purchasers and their affiliates and related parties concerning their investment in CBP II and the management and operations of Calim/Black Diamond Funds, as more fully set forth in a Verified Complaint served upon Purchasers and related parties on February 11, 2016;

WHEREAS, Purchasers dispute the allegations made by Sellers;

WHEREAS, the Parties have negotiated in good faith to resolve their dispute;

WHEREAS, the Parties wish to attempt to resolve their differences without litigation but do not want to lose any of their rights due to the passage of time or any statutorily created limitations periods;

WHEREAS, in order to resolve such dispute, Sellers have agreed to sell their Units and Purchasers have agreed to purchase such Units on the terms and conditions set forth herein;

WHEREAS, to avoid the delay, uncertainty, inconvenience and expense of protracted litigation, and in consideration of the Recitals and mutual promises contained herein, and for other good and value consideration, the Parties agree as follows:

## TERMS OF AGREEMENT

1.    Agreement to Purchase the Units. Under the terms and conditions of this Agreement, Purchasers jointly and severally agree to purchase from Sellers, and Sellers agree to sell to Purchasers, the Units. The initial closing of the purchase and sale of the Units shall occur on December 31, 2016

1

EXECUTION VERSION

(the "Initial Closing Date").  On the Initial Closing Date, Purchasers shall purchase, by wire transfer of immediately available funds to an account or accounts provided by Sellers on or prior to the Initial Closing Date, .92 Units for an amount equal to the First Payment.  On each of March 31, 2017, June 30, 2017, December 31, 2017, and June 30, 2018 (each a "Subsequent Closing Date"), Purchasers shall purchase, by wire transfer of immediately available funds to an account or accounts provided by Sellers on or prior to the applicable Subsequent Closing Date, the number of Units to be purchased on such Subsequent Closing Date (as set forth in Section 2.1 below) for an amount equal to the Second Payment, Third Payment, Fourth Payment, and Fifth Payment, as applicable.

2. Consideration.  In consideration for the purchase of all of the Units, Purchaser shall pay to Sellers the aggregate sum of Three Million Two Hundred and Fifty Thousand Dollars ($3,250,000) (the "Purchase Price").

   2.1 Payment Schedule.  The Purchaser shall pay the Purchase Price in accordance with the following schedule (each a "Purchase Price Payment"):

   | Amount | Due Date | Units Purchased |
   | --- | --- | --- |
   | $100,000 ("First Payment") | December 31, 2016 | .92 |
   | $150,000 ("Second Payment") | March 31, 2016 | 1.39 |
   | $1,000,000 ("Third Payment") | June 30, 2017 | 9.23 |
   | $1,000,000 ("Fourth Payment") | December 31, 2017 | 9.23 |
   | $1,000,000 ("Fifth Payment") | June 30, 2018 | 9.23 |
   | | Total: | 30 |

   2.2 Units Purchased. Each Seller shall sell to Purchasers only such Seller's *pro rata* share of the fraction of the Units that correspond with the respective Purchase Price Payments as set forth in the above schedule, when, and only if, such Purchase Price Payments are made.  Until the entire Purchase Price has been paid, Sellers shall continue to hold his/her remaining Units and shall have all rights associated with their ownership interests in such Units.

   2.3 Sellers' Ability to Sell Units.  Notwithstanding anything to the contrary in this Agreement or the operating documents for CBP II, each of the Sellers may at any time agree to sell his or her Units to any of the other Sellers for any amount of consideration.  This Agreement shall remain applicable to all of the Units, regardless of which Seller owns them.

   2.4 Release.  Upon indefeasible payment in full of the Purchase Price Payments, plus any accrued interest and costs or fees necessary to enforcement this Agreement ("Termination Date"), Sellers shall execute and deliver to Purchasers a Release, substantially in the form attached hereto as Exhibit A (the "Release").

2

EXECUTION VERSION

3. Agreement to Use Best Efforts to Advance the Purchase Price.

    3.1 Advance Payments. Notwithstanding the schedule of payments set forth in Section 2.1, Purchasers shall use their best efforts to remit the Purchase Price to Sellers in advance of the due dates provided herein. Consistent with this, Purchasers shall use any free cash flow due and owing to Purchasers by any of their affiliates related to the operation or financing of CBP II, Calim Venture Partners I LLC, Calim Venture Partners II LLC, Calim Bridge Partners II LLC, Black Diamond Fund I LLC, Black Diamond Bridge Capital Fund, and Black Diamond Holdings LLC (collectively, the "Calim/Black Diamond Funds") to first pay any portion of the Purchase Price to Sellers ("Advance Payments"), in accordance with Section 3.2, including before any such free cash flow is used to provide any form of compensation, reimbursement, or other payments to Purchasers or any of their affiliates or related parties.

    3.2 BDFG Agreement to Set Aside Funds for Allocation to the Purchase Price Payments. BDFG shall set aside twenty percent (20%) of any and all income to make the Purchase Price Payments.

    3.3 Application of Advance Payments. Sellers agree to accept any Advance Payments from the Purchasers, so long as such Advance Payments are in increments of not less than Twenty Five Thousand ($25,000). Any Advance Payments shall first be applied to, and deducted from, the Fifth Payment (and to the extent the Fifth Payment has been prepaid, the Fourth Payment).

    3.4 Units Corresponding with Advance Payments. Upon Purchasers making any Advance Payment, the corresponding fraction of Units shall be effectively sold by Seller. For example, an Advance Payment of $100,000 shall equal the purchase of 0.923 Units.

    3.5 Notice of Financing, Public Transaction, or New Investment. Purchasers shall provide notice within ten (10) days to Sellers of any financing or public transaction relating to the Calim/Black Diamond Funds, as well as any investment of greater than $100,000 to any of the Calim/Black Diamond Funds.

4. Event of Default. A failure by Purchasers to make any of the Purchase Price Payments, any breach of any representation or warranty made by Purchasers herein, any breach of any of Purchaser's covenants, or any repudiation of Purchasers' obligations under this Agreement ("Event of Default"), shall constitute an Event of Default and shall immediately trigger the default rights set forth herein.

5. Default Interest. In the Event of Default, interest on any unpaid balance owed under this Agreement, including as to any payments not yet due, shall immediately accrue at a rate of 12% per annum. By way of example, any failure to make the First Payment on December 31, 2016 shall cause the immediate accrual of interest on First Payment, the Second Payment, the Third Payment, the Fourth Payment, and the Fifth Payment.

6. Promissory Note. Simultaneously with the execution of this Agreement, BDH is executing a Promissory Note to BDFG (the "Promissory Note") representing a portion of the unpaid

3

management, placement and incentive fees plus other amounts that have accrued to the account of BDFG in its capacity as manager of certain Calim/Black Diamond Funds. Purchasers hereby represent and warrant that the Promissory Note represents the management, placement and incentive fees plus other amounts currently past due and owing by the identified Calim/Black Diamond Funds as of the Effective Date and that such amounts are due and owing to BDFG as of the Effective Date without any further action by BDFG.

7. <u>Pledge of Promissory Note</u>.

    7.1 <u>Pledge</u>. BDFG hereby pledges and grants to Sellers a security interest in the Promissory Note (the "<u>Pledge</u>") as security for payment in full of the Purchase Price. Purchasers authorize Sellers at any time upon the occurrence and during the continuation of an Event of Default, to transfer the Promissory Note to Sellers and neither Purchaser shall raise any objections or take any actions to prevent or impair such transfer. Each Purchaser further agrees that upon an Event of Default, such Purchaser shall take any and all actions requested by Sellers to transfer the Promissory Note to Sellers, including executing and delivering any documentation requested by Sellers in connection therewith.

    7.2 <u>Event of Default</u>. Upon the occurrence and during the continuation of an Event of Default, Sellers, in their discretion may, individually or collectively, and upon such terms and in such manner as Sellers may deem advisable, sell, assign, transfer and deliver the Promissory Note for payment, or any part thereof, and in each case Sellers will apply the net proceeds of the distributions thereof to the Purchase Price, whether or not due, and to the Purchase Price Payments as Sellers in their discretion may deem advisable. No prior notice need be given to Purchasers or anyone else in the case of any assignment of the Promissory Note.

    7.3 <u>Additional Covenants of Purchasers</u>.

        a) Purchasers covenant and agree to defend the right, title and security interest of Sellers in and to the Promissory Note, and to maintain and preserve the lien and security interest provided for by this Pledge against the claim and demands of all persons, so long as this Pledge remains in effect.

        b) Purchasers covenant and agree not to sell, assign, transfer, exchange, or otherwise dispose of, or grant any option with respect to, or create, incur or permit to exist any pledge, lien, mortgage, hypothecation, security interest, charge, option or any other encumbrance with respect to the Promissory Note, or any interest therein, or any proceeds thereof, except for the lien and security interest provided for by this Pledge.

        c) Purchasers covenant and agree (a) to cooperate, in good faith, with Sellers and to do or cause to be done all such other acts as may be necessary to enforce Sellers' rights under this Agreement and Pledge, (b) not to take any action, or to fail to take any action which would be adverse to Sellers's interest in the Promissory Note and hereunder.

EXECUTION VERSION

    7.4    <u>Attorney-in-Fact</u>.  Purchasers hereby authorize and empower Sellers to make, constitute and appoint any officer or agent of Sellers as it may select, in its exclusive discretion, as Purchasers' true and lawful attorney-in-fact, with the power upon the occurrence and continuance of an Event of Default to endorse Purchasers' name on all applications, documents, papers and instruments necessary for Sellers, individually or collectively, to take actions with respect to the Promissory Note, including, without limitation, actions necessary for Sellers, individually or collectively, to assign, pledge, convey or otherwise transfer title in or dispose of the Promissory Note to anyone else.  Purchasers ratifies all that such attorney may lawfully do or cause to be done by virtue hereof.  This power of attorney will be irrevocable for the life of this Pledge.

    7.5    <u>Costs and Expenses</u>.  If Purchasers fails to comply with any of their obligations hereunder, Sellers, individually or collectively, may do so in Purchasers' name or in Sellers' name, but at Purchasers' expense, and Purchasers hereby agrees to reimburse Sellers in full for all expenses, including reasonable attorney's fees, incurred by Sellers in protecting, defending and maintaining the Promissory Note.  Without limiting the foregoing, any and all reasonable fees, costs and expenses, of whatever kind or nature, including the reasonable attorneys' fees and expenses incurred in connection with the filing or recording of any documents (including all taxes in connection therewith) in public offices, the payment or discharge of any taxes, maintenance fees, encumbrances or otherwise protecting, maintaining or preserving the Promissory Note, or in defending or prosecuting any actions or proceedings arising out of or related to the Promissory Note, will be borne and paid by Purchasers on demand by Sellers.

8.    <u>Confession of Judgment</u>.  In the event that Purchasers fail to make one or more of the Purchase Price Payments, each of Purchasers, hereby voluntarily, expressly, knowingly, and without contingency authorize an attorney at law selected by Purchasers to appear in any court in the state of Colorado, or any other state of the United States, to waive issuance and service of process and to confess a judgment against each of the Purchasers, jointly and severally, for all sums due, which unpaid sums shall be attested to in an affidavit signed by a representative of Sellers, together with costs of suit and all reasonable attorney's fees necessary to enforce this Agreement or the Promissory Note.  Any failure by Purchasers to make any payment due under this Agreement will operate to confess judgment of all payments provided for in this Agreement, together with costs of suit and reasonable attorney's fees.  Purchasers, and each of them, further hereby voluntarily, expressly and without contingency, waive and release all errors and rights of appeal.

9.    <u>Tolling</u>.  The period between February 11, 2016 and the Termination Date, as defined in paragraph 2.4, shall not be included in determining the applicability of any statute of limitations, laches, or any other defense based (in whole or in part) on the lapse of time (whether equitable, statutory, contractual, or otherwise) in any action or proceeding brought by the Sellers against the Purchasers and their affiliates and related parties concerning their investment in CBP II and the management and operations of Calim/Black Diamond Funds.  It is the express intention of the Parties to preserve their rights and status as of February 11, 2016 for purposes of any defense based (in whole or in part) on the lapse of time (whether equitable, statutory, contractual, or otherwise).

EXECUTION VERSION

10. <u>No Prejudice</u>.  Nothing in this Agreement shall affect any defense available to any Party as of February 11, 2016, and this Agreement shall not be deemed to revive any claim that is or was already barred on that date.  Nothing in this Agreement, or in the circumstances which gave rise to this Agreement, shall be construed as an acknowledgement by any Party that any claim has or has not accrued.  Nothing in this Agreement, or in the circumstances which gave rise to this Agreement, shall be construed as an acknowledgement by any Party that any claim has or has not been barred, or is about to be barred, by the statute of limitations, laches, or other defense based on the lapse of time.

11. <u>Standstill</u>.  So long as Purchasers are in compliance with all terms of this Agreement, including having made all Purchase Price Payments set forth in Section 2.1, no Party will file suit against any other Party relating to Sellers' investment in CBP II and the management and operations of Calin/Black Diamond Funds.

12. <u>Purchasers' Representations</u>.  Purchasers acknowledge, represent, warrant, and covenant as follows:

   12.1  The Promissory Note (and the amounts represented thereby) has a priority lien behind the secured creditors in the assets of BDH.

   12.2  Purchasers have carefully read and reviewed the Agreement and the Promissory Note and have reviewed the terms of those agreements with one or more attorneys of Purchasers' choice.

   12.3  Purchasers are duly authorized to enter into this Agreement, and the Promissory Note, on behalf of BDFG and Imeson, and do so voluntarily.

   12.4  BDFG is duly authorized to enter into the Promissory Note on behalf of BDH and no further action, approval or consent on the part of BDFG or BDH is required or necessary.

   12.5  Neither the execution and the delivery of this Agreement, nor the consummation of the transactions contemplated hereby will violate any constitution, statute, regulation, rule, injunction, judgment, order, decree, ruling, or other restriction of any governmental authority, court or otherwise to which Purchasers are subject, or any provision of BDFG's organizational documents.

   12.6  No consent, approval or authorization of any person or entity is required to be obtained by BDFG, in connection with the execution and delivery by the BDFG of this Agreement or the consummation of the transactions contemplated hereby that has not already been obtained and delivered.

   12.7  The Promissory Note is not subject to any pledge, lien, mortgage, hypothecation, security interest, charge, option, warrant, or other encumbrance whatsoever, nor to any agreement purporting to grant to any third party a security interest in the property or assets of Purchasers which would include the Promissory Note, except the lien created hereunder, the security interest created by this Pledge or otherwise securing only Sellers.

EXECUTION VERSION

12.8  BDFG has full power, authority and legal right to pledge the Promissory Note pursuant to the terms of this Pledge.

12.9  Purchasers fully anticipate that the Purchase Price will be repaid without the necessity of using the Promissory Note.

13. <u>Sellers' Representations</u>.  Sellers acknowledge, represent, warrant, and covenant as follows:

13.1  Sellers represent and warrant that the Units represent all of the equity securities of CBP II originally purchased by Sellers.

13.2  Sellers have not assigned or transferred, or purported to transfer, to any person or entity, any of the Units or any of the released claims set forth in the Release.

13.3  Sellers are duly authorized to enter into this Agreement on behalf of Michel Al-Absi, Bachir Al-Absi, and Jessica Al-Absi, and do so voluntarily.

14. <u>Notice of Non-Payment, Insolvency Proceedings, or Sale of Portfolio Investments</u>.  Purchasers shall provide prior written notice within ten (10) days to Sellers if they are unable to make any of the Purchase Price Payments or in the event that they or any of the Calim/Black Diamond Funds become the subject of bankruptcy or insolvency proceedings.  Purchasers shall provide prior written notice within ten (10) days to Sellers if they intend to sell any portfolio investment held by any of the Calim/Black Diamond Funds.

15. <u>No Waiver; Cumulative Remedies</u>.  No failure to exercise and no delay in exercising, on the part of Sellers, any right, remedy, power or privilege hereunder shall operate as a waiver thereof; nor shall any single or partial exercise of any right, remedy, power or privilege hereunder or preclude any other or further exercise thereof or the exercise of any other right, remedy, power or privilege.  The rights, remedies, powers and privileges herein provided are cumulative and not exclusive of any rights, remedies, powers and privileges provided by law, in equity or otherwise.

16. <u>Indemnification</u>.  Purchasers, jointly and severally, agree to indemnify Sellers against and in respect of any and all losses, liabilities, damages, obligations, claims, encumbrances, costs and expenses (including costs of suit and attorneys' fees and expenses) incurred by Sellers resulting from any breach of any representation, warranty, covenant, or agreement made by Purchasers herein.

17. <u>No Admission of Liability</u>.  Neither Party admits or acknowledges any liability to any other Party and specifically denies the existence of such liability.

18. <u>Entire Agreement</u>.  This Agreement, together with the Promissory Note, constitute the entire agreement of the Parties.  All prior understandings, representations and agreements are merged into these agreements, and this Agreement shall not be modified in any manner, except by written instrument signed by both Parties.

19. <u>Ambiguity</u>.  Should any provision of this Agreement be found to be ambiguous in any way, such ambiguity shall not be resolved by construing the terms of this Agreement in favor or against

E<small>XECUTION</small> V<small>ERSION</small>

either of the Parties hereto, but rather by construing the term of this Agreement in accordance with the generally accepted meaning of such terms.

20. <u>Modification and Waiver</u>.  A modification or waiver of any of the provisions of this Agreement shall be effective only if made in writing and executed by both Parties with the same formality as this Agreement.

21. <u>Notices</u>.  All notices, requests and other communications required or permitted under this Agreement shall be in writing and shall be personally delivered or sent by a recognized overnight delivery service, certified mail, postage prepaid, return receipt requested, or by electronic mail to Sellers or Purchaser, as the case may be, at the address set forth below:

   If to Purchasers:  Black Diamond Financial Group LLC
            1620 Wynkoop St., Suite 400
            Denver, CO 80202
            Attention:  Patrick Imeson
            Email:  Patrick.Imeson@bdfin.com

            with a copy to:

            Dorsey & Whitney LLP
            1400 Wewatta Street
            Suite 400
            Denver, CO 80202-5549
            Attention:  Stephen D. Bell, Esq.
            Email:  Bell.Steve@dorsey.com

   If to Sellers:  Michel Al-Absi
            Concord Tower
            Suite 804
            Dubai Media City
            UAE
            P.O. Box 39273
            Email:  michel.absi@gmail.com

            with a copy to:

            Jones Day
            51 Louisiana Ave NW
            Washington, DC 20001
            Attention:  David Torborg
            Email:  dstorborg@jonesday.com

22. <u>Time of the Essence</u>.  With respect to all of obligations set forth in this Agreement, time is of the essence as to all dates and times.

EXECUTION VERSION

23. <u>Execution</u>.  This Agreement shall be executed in duplicate originals.  The attorneys for the parties shall each maintain an original unless necessary to file with a court for enforcement purposes.  Facsimiles of signatures, and/or electronic signatures in portable document format (.pdf) shall constitute acceptable, binding signatures for purposes of this Agreement.

24. <u>Successors and Assigns</u>.  This Agreement is intended to bind and inure to the benefit of and be enforceable by Purchasers and Sellers and their respective successors and assigns.

25. <u>Governing Law</u>.  This Agreement shall be deemed to be performed in the state of Colorado and shall be governed by, construed, and enforced in accordance with the laws of Colorado.  The Parties hereby consent to the jurisdiction of Colorado with respect to any dispute relating to or arising out of this Agreement.

26. <u>No Strict Construction</u>. The language used in this Agreement shall be deemed to be the language chosen by the Parties hereto to express their mutual intent, and no rule of strict construction shall be applied against any Party.

27. <u>Remedies</u>. Each of the Parties will be entitled to enforce its rights under this Agreement specifically, to recover damages and costs (including attorney's fees) caused by any breach of any provision of this Agreement and to exercise all other rights existing in its favor.  The Parties agree and acknowledge that money damages may not be an adequate remedy for any breach of the provisions of this Agreement and that any Party may in its sole discretion apply to any court of law or equity of competent jurisdiction (without posting any bond or deposit) for specific performance and/or other injunctive relief in order to enforce or prevent any violations of the provisions of this Agreement.

28. <u>Counterparts</u>.  This Agreement may be executed in counterparts, each of which will be deemed to be an original and which taken together will constitute one and the same agreement.

[SIGNATURE PAGE FOLLOWS]

EXECUTION VERSION

IN WITNESS WHEREOF, the parties have executed this Share Purchase, Settlement, Pledge Agreement and Tolling in duplicate originals, and have set forth their signatures with the intention of executing this document under seal.

**SELLERS:**

_____     _____
MICHEL AL-ABSI                 BACHIR AL-ABSI

Date: 9/14/16                  Date:


_____
JESSICA AL-ABSI

Date:


**PURCHASERS:**

_____     _____
BLACK DIAMOND FINANCIAL        PATRICK W. M. IMESON
GROUP
By: Patrick W. M. Imeson

Date:                          Date:

_____

<u>EXECUTION VERSION</u>

IN WITNESS WHEREOF, the parties have executed this Share Purchase, Settlement, Pledge Agreement and Tolling in duplicate originals, and have set forth their signatures with the intention of executing this document under seal.

**SELLERS:**

_____          _____
MICHEL AL-ABSI                      BACHIR AL-ABSI

Date:                               Date:


_____
JESSICA AL-ABSI

Date:


_____

**PURCHASERS:**

_____          _____
BLACK DIAMOND FINANCIAL             PATRICK W. M. IMESON
GROUP
By: Patrick W. M. Imeson

Date:                               Date:

_____

EXECUTION VERSION

IN WITNESS WHEREOF, the parties have executed this Share Purchase, Settlement, Pledge Agreement and Tolling in duplicate originals, and have set forth their signatures with the intention of executing this document under seal.

**SELLERS:**

_____        _____
MICHEL AL-ABSI                                        BACHIR AL-ABSI

Date:                                                              Date: 14/9/2016


_____
JESSICA AL-ABSI

Date:


_____

**PURCHASERS:**


_____        _____
BLACK DIAMOND FINANCIAL                PATRICK W. M. IMESON
GROUP
By: Patrick W. M. Imeson

Date:                                                              Date:

_____

10

E<small>XECUTION</small> V<small>ERSION</small>

IN WITNESS WHEREOF, the parties have executed this Share Purchase, Settlement, Pledge Agreement and Tolling in duplicate originals, and have set forth their signatures with the intention of executing this document under seal.

**SELLERS:**

_____   _____
MICHEL AL-ABSI                                   BACHIR AL-ABSI

Date:                                                        Date:


_____
JESSICA AL-ABSI

Date:


_____

**PURCHASERS:**

_____   _____
BLACK DIAMOND FINANCIAL              PATRICK W. M. IMESON
GROUP
By: Patrick W. M. Imeson

Date:                                                        Date: 9/13/16

  9/13/16
_____

10